Curia per

Harper, Ch.
Though it may be regarded as the settled doctrine of the English courts at the present day, that every codicil is a re-publication of the will, whether annexed to it or referring to it or not, yet we certainly are not bound to follow the decision of the English courts, innovating on previously established doctrine, since our jurisprudence was separated from theirs. At that time the law stood as it was settled by the cases of Acherly if Vernon, and the Attorney General and Downing-, between which, notwithstanding what is said in Crow v. Barns, I am unable to perceive any contradiction. In the former, the decision was on the ground of an express confirmation; the latter recognizes that there may be a re-publication by “express speech or word that it shall stand as his will.” It also supposes that there maybe are-publication by annexing the codicil; which Lord Hardwicke, in Gibson v. Montfort, suggests must be at the time of execution.
When the codicil is annexed to the will at the time of execution, it may very well be regarded not as an implied, but as an express re-publication. The codicil being annexed and made part of the will, and then executed in the presence of witnesses, would seem to be a publication of the entire instrument, consisting of will and codicil, and not of the codicil merely.
So, when there is an express confirmation, the testator at the time of executing the codicil, declares his then present intention that it shall operate and have effect as his will. This seems nearly equivalent to an express re-publication. The testator declares that the will shall speak as at the time of the execution of the codicil.
I do not suppose that this effect will be produced by merely referring to the will, nor even by a direction that the codicil shall bo annexed to and form part of it; as has been said, it will equally form part of the will, whether this direction be given or not. The substantial purpose for which the will and codicil are said to form one instrument is, that the whole may be construed together for the purpose of ascertaining the testator’s intentions, and giving consis *200 tent effect to his dispositions. But that purpose has no relation to the matter we are now considering. We are more inclined to these views, because one of the most eminent of the English Judges has expressed his dissatisfaction at the departure from this ancient rule.
Not being a re-publication in this case, all the witnesses to it are competent as of a will of personal estate. Even if there were an express re publication, we should think it good as a testamentary disposition of personal estate. A will in England disposing both of land and personalty, will, if not attested by a sufficient number of witnesses, be good for the personalty, thoirgh not for the land; so, by parity of reason, if ono of the witnesses were incompetent; so, if the will were duly executed and the codicil insufficiently attested, this would form part of the will. Yet it would not pass land, even though it contained an express confirmation, or were annexed to the will at the timo of execution.
Though it might not be necessary to the decision of the case, wo think it proper to say that we perceive no ground on which we would be justified in declaring the statute 25th Geo. 2nd, c. 6, not of force in this State; it has been omitted in compilations of the laws, and one or two decisions have been made contrary to the effect of it, in cases in which it was evidently not brought to the view of the Court. But this can hardly be thought sufficient to repeal a statute, which there is no serious ground to contend was not once of force.
We do not think it necessary to add any thing to reasoning of the decree, to chew that the paper of the 9th of Nov. 1835, must be regarded as testamentary and as a codicil; it is contended, however, that the words “revoking and disannulling all other will or wills, deed or deeds inconsonant or repugnant to the foregoing deed of conveyance or any part thereof, to the true intent and meaning of the same,” must have the effect of revoking the whole of the previous will. But this interpretation, I apprehend, would be more litoral than sound. When an act of the Legislature repeals all acts repugnant to itself, this I think is universally received to mean, in so far as they are repugnant. The testator was making a particular disposition of a portion ofhis estate in favor of his wife. \Vhal c.tm we reasonably suppose the intention of the testator in *201 using the terms in question? Why, to prevent any former disposition of his estate from interfering with the effect of the act he was then performing according “to the true intent and meaning of the same.” In his' will, where he made a competent disposition of his estate, he revokes all wills “heretofore made.” Is this difference of phraseology tohave no difference of effect? It would be too much to suppose that the testator intended to annul a full and well considered disposition of his whole estate, by the use of terms so loose.
This Court concurs with the Chancellor, that slaves conveyed by the testator to his daughter, Mrs. Moore, and the sum of five thousand dollars paid to Mr. Fludd to be invested in slaves, to be conveyed for the mutual benefit of himself and wife, must be regarded as part satisfaction of the testator’s legacies to them, according to the principles of the decree.
It is suggested that the decretal order should be so enlarged, as to direct more explicitly an account to be taken of the debts due by the testator’s estate. This is ordered accordingly, and the decree is afiirmed.